Submitted May 1, affirmed December 16, 2020, petition for review denied April 8, 2021 (367 Or 826)

In the Matter of
the Suspension of the Driving Privileges of

Elester Lowell JENSEN,
*Petitioner,*

*v.*

DRIVER AND MOTOR VEHICLE
SERVICES DIVISION (DMV),
a Division of the Department of Transportation,
*Respondent.*

Office of Administrative Hearings
2018DMV10969; A169935

480 P3d 315

Petitioner seeks judicial review of a final order of an administrative law judge (ALJ), affirming the suspension of petitioner's driving privileges by DMV as authorized by ORS 809.419(3). Invoking OAR 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, petitioner first raises an argument that, because the reporting health care provider, in his view, was not a mandatory reporter, DMV lacked authority to suspend the license based on the submitted "Mandatory Impairment Referral" form. Second, petitioner argues that there was not substantial evidence to support a finding that petitioner's impairment was "severe and uncontrollable." *Held*: Petitioner's challenge to DMV's authority to suspend based on the report was not preserved; and the record did not lack substantial evidence to sustain DMV's order to suspend petitioner's driver license.

Affirmed.

Jason E. Thompson filed the brief for petitioner.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jeff J. Payne, Assistant Attorney General, filed the brief for respondent.

Before DeVore, Presiding Judge, and Mooney, Judge, and Hadlock, Judge pro tempore.

DeVORE, P. J.

Affirmed.

**DeVORE, P. J.,**

Petitioner seeks judicial review of a final order of an administrative law judge (ALJ), affirming suspension of petitioner's driving privileges by the Driver and Motor Vehicles Services Division (DMV) as authorized by ORS 809.419(3).[1] On review, petitioner assigns error to the suspension raising two challenges to the ALJ's order. First, petitioner argues that the ALJ erred in relying on the report of a health care provider who, in petitioner's view, was not a mandatory reporter as defined by OAR 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. Second, petitioner argues that there was not substantial evidence to support the ALJ's finding that petitioner's impairment was "severe and uncontrollable." On the first issue, we conclude that petitioner did not preserve his arguments before the ALJ. On the second issue, we conclude that the record contains substantial evidence of the requisite impairment. We affirm.

In May 2018, DMV received a report of petitioner's impairment from Sullivan, an occupational therapist. Petitioner suffered a stroke in September 2016. Petitioner's primary care physician referred petitioner to Sullivan for health care services. Sullivan had seen petitioner for four therapy sessions from April 2017 to May 2018. In the DMV's "Mandatory Impairment Referral" form, Sullivan reported that petitioner had impairments evidenced by diminished strength, motor planning and coordination, reaction time, and lack of emotional control as related to petitioner's right upper extremity. Sullivan explained that petitioner's right upper extremity had an impaired reaction time and remained partially dominated by "neurological tone." As to his right hand, Sullivan explained that petitioner had impaired fine motor skills and difficulty with controlled release. Sullivan indicated that petitioner also demonstrated "over-flow" reactions, or noncontrolled movements, of his "non-affected trunk" and upper extremity when petitioner focused his attention on controlling his weakened arm. Based on that

---

[1] ORS 809.419(3)(a) provides:

"The department may suspend the driving privileges of a person who is incompetent to drive a motor vehicle because of a mental or physical condition or impairment that affects the person's ability to safely operate a motor vehicle upon the highways."

information, DMV issued a notice of immediate suspension of petitioner's driver license. DMV did so pursuant to its mandatory reporting program, set forth in OAR chapter 735, division 74.

Petitioner requested a hearing to contest the suspension of his license. Petitioner was the only witness at the hearing. Petitioner testified that he could now move his hand "all around" and "[d]o anything [he] want[ed] to with it." He did not present medical information regarding his ability to operate his hand that would contradict Sullivan's referral form more specifically.

In the ALJ's order, the ALJ made a number of findings. Among them, the ALJ found that Sullivan "was [p]etitioner's health care provider providing health care services based on a referral from [p]etitioner's primary care provider." The ALJ found that petitioner's functional or cognitive impairment was severe and uncontrollable; that petitioner believes his physical condition has improved; and that petitioner has not provided additional medical information to refute the report. The ALJ indicated that the person making the referral report was petitioner's primary care provider or a physician or health care provider providing specialized care or emergency health care services to a person who does not have a primary care provider. The ALJ's discussion in the order referred to Sullivan, at the time, as "[p]etitioner's treating physician."

The order determined that the report contained all the information required by DMV and that DMV was authorized to suspend petitioner's driving privileges. The ALJ's order concluded that, based on the referral form, "DMV had a valid basis to believe that [p]etitioner suffers from 'severe and uncontrollable' cognitive impairments that adversely affect [p]etitioner's ability to safely operate a motor vehicle." The ALJ stated that "[i]t was reasonable for DMV to believe that [p]etitioner may endanger people or property, including himself and his own property, if he continues to operate a motor vehicle." Accordingly, the order affirmed DMV's suspension of petitioner's license, because DMV had a valid basis to do so "under its mandatory medical reporting program."

On review, petitioner first argues that the ALJ erroneously interpreted the rule listing some of the health care professionals who are mandatory reporters—those listed in OAR 735-074-0090(1).[2] Specifically, petitioner argues that the ALJ erred in finding that the occupational therapist was considered petitioner's "primary care provider" under subsection (1) of that provision. In effect, petitioner assumes that, if the occupational therapist was not a reporter who would be required by the rule to report, then DMV could not rely on the information provided so as to suspend his license under the mandatory reporting program.

Before we may consider the argument or DMV's response, we are obliged to determine independently whether petitioner has preserved the issue in the administrative proceeding before the ALJ. *Baker v. DMV*, 201 Or App 310, 313, 118 P3d 852 (2005). The rules of preservation established in ORAP 5.45 apply on judicial review of administrative agency orders. *Id.* Our preservation analysis takes a pragmatic approach, asking whether the party provided the agency, or ALJ, with an explanation of his or her objection that is specific enough that the agency or ALJ can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted. *Reed v. Board of Parole*, 240 Or App 353, 356, 245 P3d 1287, *rev den*, 350 Or 230 (2011) (citing *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000)).

Our responsibility parallels that of the appellant who, in the opening brief, "must demonstrate that the question or issue presented by the assignment of error timely and properly was raised and preserved in the lower court." ORAP 5.45(4)(a). The appellant "must specify * * * the method or manner of raising [the question or issue]." ORAP 5.45(4)(a)(i). The appellant must set out pertinent quotations of the record where the question or issue was raised and the challenged ruling was made, together with reference to the pages of the transcript or other parts of the record quoted or to the excerpt of record if the material quoted is set out in the excerpt of record. ORAP 5.45(4)(a)(ii). As applied here,

---

[2] Other health care providers, including those providing services on referral from the primary care physician are listed in OAR 735-074-0090(2).

if petitioner wishes to demonstrate preservation of error of his legal issue, he must show, not just that he questioned in the administrative hearing whether Sullivan was a primary care provider as a matter of fact. Petitioner must show where he presented an issue of law in the hearing that Sullivan's role meant that she was not a mandatory reporter, and, as a result, DMV lacked authority to suspend the license based on her report. Because the opening brief lacks that information, it does not comply with ORAP 5.45(4).

Our review results in the conclusion that petitioner's current argument was not made before the ALJ. Although petitioner did assert that Sullivan was not his primary care provider, he did not raise the issue of whether petitioner qualified as a mandatory reporter as defined by OAR 735-074-0090. Petitioner did not assert that, if Sullivan failed to qualify as a mandatory reporter, then she could not file a mandatory referral form under OAR 735-074-0140. He did not argue that DMV lacked authority to suspend a license based on a report of someone who was not a mandatory reporter. Instead, petitioner raised the issue of whether Sullivan was his primary physician to suggest that Sullivan lacked accurate knowledge regarding whether petitioner's impairment was severe and uncontrollable. Petitioner's factual argument to the ALJ, offered for a different purpose, was not the legal challenge that petitioner now raises on review. *See Reed*, 240 Or App at 356 (finding petitioner's argument unpreserved where it was "simply too general to alert the board to the more specific argument he now asserts"). For that reason, petitioner's first challenge to the suspension is unpreserved, and we cannot consider it on review.[3]

We turn to petitioner's challenge disputing that there was sufficient evidence to conclude that petitioner's impairment was "severe" and "uncontrollable," as required

---

[3] Petitioner makes no request for plain error review. Given the rule and arguments surrounding it, any error is not plain. *See State v. Inman*, 275 Or App 920, 927, 366 P3d 721 (2015), *rev den*, 359 Or 525 (2016) (explaining that an error is plain where it is "obvious, [and] not reasonably in dispute," among other qualifications). And, even if the error were plain, these are not circumstances that would call for the exercise of discretion to correct any error. *See id.* at 928 (providing a nonexclusive list of our considerations when deciding to exercise such discretion).

for impairments reported using a Mandatory Impairment Referral form. OAR 735-074-0060(1); OAR 735-074-0110; OAR 735-074-0130. We review final orders for errors of law to determine whether "substantial evidence" supports the order. ORS 183.482(8)(c). "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." *Id*. Evidence includes inferences rationally deduced from the primary facts presented in the record. *City of Portland v. Bureau of Labor and Ind.*, 298 Or 104, 118 n 7, 690 P2d 475 (1984).

Under DMV's rules, an impairment is "severe" where the impairment "substantially limits a person's ability to perform activities of daily living, including driving, because it is not controlled or compensated for by medication, therapy, surgery, or adaptive devices. A severe impairment not expected to last more than six months is not required to be reported." OAR 735-074-0080(11). An impairment is "uncontrollable" where it "persists despite efforts to control or compensate for it by medication, therapy, surgery, or adaptive devices. Uncontrollable does not include an impairment for which treatment by medication, therapy, surgery, or adaptive devices is currently under evaluation." OAR 735-074-0080(12).

In this record, there is substantial evidence to satisfy those requirements. The occupational therapist reported on the referral form that petitioner's lack of control of his right hand was present despite multiple therapy sessions. During his testimony at the hearing and through his submitted medical records, petitioner did not establish that he was undergoing any treatment or therapy that controlled or compensated for his hand's impairment. Based on that evidence, a reasonable person could conclude that petitioner's reported impairment was not controlled or compensated for by medication, therapy, surgery, or adaptive devices.

The therapy sessions took place starting about seven months after petitioner had his stroke in September 2016 and continued at least until the occupational therapist submitted the referral form in May 2018. Because petitioner's impairment was still present over a year and a half

after his stroke and because the occupational therapist was still concerned about multiple active functional and cognitive impairments, it was rational for the ALJ to infer that petitioner's impairment would be expected to last an additional six months.

Given that record, the ALJ's order did not lack substantial evidence to sustain DMV's order to suspend petitioner's driver license. Accordingly, we affirm.

Affirmed.